ALFRED BOWMAN v. AMERICAN CAR AND FOUNDRY COMPANY, JOHN LAWLER and HACK CLARK, Appellants.

Division One, March 1, 1910.

1. **NEW TRIAL: Instruction: Reasonable Care.** An instruction for a foundry company, on whose grounds plaintiff was working as the servant of an independent contractor of the company, engaged in piling its pig iron, when a pile fell and injured plaintiff, which tells the jury that the company was not the insurer of plaintiff's safety, nor required to keep its premises absolutely safe, but only to keep them reasonably safe, and if it piled its pig iron in such a manner that it appeared to be secure and safe and the pile had been standing for four months, then, etc., was not erroneous, and the giving of it afforded no basis for granting plaintiff a new trial after verdict for the company.

2. **NEGLIGENCE: Piling Pig Iron: No Evidence.** Where plaintiff was piling pig iron by the side of a pile which had stood for four months and which fell and injured him, and there was no evidence that it was negligently constructed, or contained a defect that was known or could have been known by the exercise of ordinary care, and plaintiff was simply instructed to pile the pig iron, and permitted to choose his own place and had room to choose one farther from the standing pile, and saw nothing himself to indicate that it was dangerous or liable to fall, although he was an experienced worker on the grounds, there is no evidence to justify the submission of the case to the jury.

3. ———: ———: ———: **Against Foreman.** Plaintiff's testimony that his employer, who was an independent contractor, told him that the company's foreman told him where to pile the pig iron, was mere hearsay, and having been denied by both, there was no evidence upon which to base a verdict against the foreman.

4. ———: ———: ———: **Dangerous Height of Pile: Conjecture.** The only defect in the pile of pig iron which fell on plaintiff that he attempted to prove was that it was higher than usual, but he did not offer any evidence to show its additional height rendered it dangerous. *Held*, that neither the court nor the jury could take cognizance that a height of seven or eight feet rendered the pile dangerous, and to base a verdict upon such fact, if dangerous it was, would be to base it on conjecture.

Appeal from St. Charles Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

REVERSED AND REMANDED (*with directions*).

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellants.

(1) The instruction which the court gave in behalf of the defendant, marked D4, and on account of the giving of which the court granted the plaintiff a new trial, assigning its action in giving said instruction as error, was a perfectly correct instruction, and, therefore, no new trial should have been granted on account of giving same. (2) The demurrer to the evidence should have been sustained, because plaintiff failed to prove that he was injured by the negligence of defendants or any of them. This being true, no new trial should have been granted for a supposed technical error, even if the court had committed error in giving an instruction. Mockowik v. Railroad, 196 Mo. 550; Bradley v. Tea & Coffee Co., 213 Mo. 320; Moore v. Railroad, 176 Mo. 528; Wagner v. Light Co., 177 Mo. 60; Lomax v. Railroad, 119 Mo. App. 200. In this case the demurrer should have been sustained. (a) Because plaintiff failed to show that the accident was

caused by negligence in piling or maintaining the pile. Proof of the mere falling of the pile does not show negligence. Beebee v. Transit Co., 206 Mo. 419. It was necessary to show a dangerous place to work, and actual or constructive knowledge on the part of the master, before plaintiff was entitled to go to the jury, and plaintiff failed to do this. Wojtylak v. Coal Co., 188 Mo. 260; Bradley v. Tea & Coffee Co., 213 Mo. 320; Machine Co. v. Zakzewski, 220 Ill. 522; Meixner v. Brewing Co., 60 Atl. 259; Branco v. Railroad, 119 Ia. 211; Weizenski v. Railroad, 94 N. Y. Supp. 869; Martin v. Royster Guano Co., 57 S. E. 681; McFadden v. Campbell, 34 N. Y. Supp. 136. (b) Because the plaintiff was in a better position than the master to know the condition of the pile, its condition was obvious, the danger of its falling was one of the hazards of the work which he assumed by continuing in his employment. See cases cited under (a). (c) Because the pile may have fallen by reason of either of two causes. 1st. The master's negligence (though that was not shown); or 2. Because of the act of plaintiff or his fellow-servants. For one of these, the master would have been liable; for the other it would not have been liable. Wherever this is true, if plaintiff fails, as this plaintiff did, to show which was the cause, he should be nonsuited. Goransson v. Mfg. Co., 186 Mo. 300. (d) Because plaintiff made the inspection for himself, and relied upon his own judgment, not upon any inspection or assurance of defendant as to the safety of the pile of pig iron which he found standing, and which fell upon him. Adams v. Railroad, 78 N. E. 687.

*Edwards & Wilson* for respondent.

VALLIANT, J.—Respondent, plaintiff, while working on the premises of the American Car and Foundry Company, was injured in his person by the fall-

ing on him of a pile of pig iron; he brought this suit praying judgment for $10,000 damages, alleging that his injuries were the result of the joint and concurrent negligence of the three defendants. At the conclusion of the plaintiff's evidence the court, at the request of the defendant Lawler, gave an instruction that, as to him, the plaintiff was not entitled to recover, but refused a similar instruction asked by each of the other two defendants, and their exceptions are duly preserved. At the close of all the evidence the plaintiff dismissed the suit as to defendant Hack Clark. The case was submitted to the jury with an instruction to find for the defendant John Lawler, and instructions pro and con as to the defendant the American Car and Foundry Company. The jury returned a verdict for both the defendants. The plaintiff filed a motion for a new trial, which the court sustained on the ground that it had erred in one of the instructions given for the American Car and Foundry Company. From that order the two defendants have prosecuted this appeal.

The petition alleged that the three defendants, the American Car and Foundry Company, a corporation, John Lawler and Hack Clark, were engaged in operating a car and foundry plant and manufacturing railroad cars; that plaintiff was employed by defendants, and that while under their orders and directions, was engaged in moving and piling a lot of iron for the defendant corporation at a point adjacent to a large pile of pig iron about ten feet high and — feet long, on the premises of the corporation, which had been placed there by the defendants; that the pile fell over on the plaintiff and inflicted very serious injuries, which are specified. The negligence charged is that the place in which the plaintiff was put to work was in an unsafe and dangerous condition, that the pig iron "had been so piled and placed as that it was liable to fall over at any time, and was so liable to fall over at any time as to render it dangerous and unsafe for

any one to engage in the work of piling iron immediately adjacent thereto; that defendants knew of the dangerous and unsafe condition of said pile of pig iron and knew of the dangerous and unsafe condition of the place at which they ordered and directed the plaintiff to work'' or by the exercise of ordinary care could have known it, etc. The answer is a general denial and a plea of contributory negligence; there is also what the counsel call a plea of assumption of risk.

The testimony on the part of the plaintiff tended to prove as follows: The American Car and Foundry Company is a corporation engaged in conducting a foundry and railroad car manufacturing business with its plant in St. Charles. On the day of the accident the plaintiff, with two other men, was engaged in piling pig iron in the yards of the corporation along by the side of another pile that had stood there several months, when the old pile fell over and a number of pieces of the pig iron fell on plaintiff and inflicted very serious injuries. The piles were constructed in the form of piles of cord wood; the pieces of pig iron were about eighteen inches in length, some longer and some less, weighing about fifty or sixty pounds. The pile that fell was constructed in the usual way, except that it was higher than usual; the plaintiff estimated the height at from seven to eight feet; he said the usual height was five or six feet, that is, as high as a man on the ground could reach to put a piece on the top. Plaintiff had been working in that kind of business for several years. He and the two men who were working with him were in the employ of defendant Hack Clark and the two men were working under the plaintiff's direction. Clark gave the orders to the plaintiff and he to the two men. Clark had directed him where to place the new pile, that is, told him to place it south of the old pile, but did not tell him how close to put it. There was space enough south of the old pile to put it several feet away, but they were piling it close to

the old pile, and the stack was about two or two and one-half feet high when the old pile fell. He was asked if there was anything to indicate danger in the situation, to which he answered, "No, sir, I didn't see anything that looked any ways dangerous; of course, if I had I wouldn't have worked there; that is all there is to it." "Q. Was there anything about that pile that looked unusual, that looked different from the way the piles ordinarily looked? A. Well, it didn't hang anyways crooked much, it didn't look to me like. Q. Piled about like the ordinary pile of pig iron in the yards? A. It was higher. . . Q. And during the time you were piling there was there anything at all that happened, before the crash came I mean, that made you think it would be a little dangerous there, you had better lookout? A. No, sir, nothing occurred. . . . Q. Those pieces weigh fifty or sixty pounds apiece? A. Yes, sir. Q. When you carry them and throw them on the pile when it's two or three feet high, they go with considerable jolt? A. Yes, sir. Q. You say you piled them so it was against the other pile? A. We was putting it—we didn't pile it just butt against the other pile so hard, but what I call against the other pile, we left a little vacancy between the piles. Q. The pieces you were piling were of different lengths? A. Yes, sir. Q. And you couldn't tell when you threw a piece of pig iron up there, if it was a little longer than the other, you couldn't tell positively whether the end would touch the pile or not? A. No, sir. Q. It was just as apt to touch it as miss it? A. Yes, sir. . . . Q. Didn't you or Green Pollard or Travis (the two men working with plaintiff) have any conversation while working there about the question of whether there's danger of that falling or not? A. No, sir; that man once, Green, said, 'I wonder if that pile will fall?' I says 'No, I guess not, I think it's all right.' . . . Q. You saw no indication of it falling then? A. No, sir, . . . Q. How

long had you been familiar with that sort of work, piling pig iron; off and on for a good many years hadn't you. A. Yes, sir."

Travis, one of the men working with plaintiff, testified: "Well the pile that fell over on him, I don't know whether it was dangerous or not, it didn't look any ways dangerous to me when I went to work there that morning."

The testimony on the part of the defendants tended to prove as follows: The plaintiff and the men working with him were not in the employ of the American Car and Foundry Company, but of the defendant Hack Clark, who was an independent contractor engaged in doing work for the American Car and Foundry Company in its yards, work of unloading freight cars and piling iron. That Clark did not tell the plaintiff where to pile the iron, only told him to pile it, and he selected the place himself. The old pile which fell had been standing several months, it was about five or six feet high; the usual height, and piled in the usual manner; there was nothing in its appearance to indicate danger.

Among the instructions given was the following:

D4. "The court instructs the jury that the defendant American Car and Foundry Company on the occasion in question was not an insurer of the safety of those who came upon its premises, nor was it obliged to keep its premises absolutely safe at all times; and if you find from the evidence that it exercised ordinary care to keep its premises reasonably safe it discharged its duty in that regard. If, therefore, you find from the evidence that the pile of pig iron which fell upon plaintiff had been standing in the same place for four months or more, that it was piled in such a manner that it appeared to be secure and safe and that there was nothing in the appearance of said pile of pig iron which would indicate to a reasonably prudent person that there was danger of its falling, then defendant

American Car and Foundry Company is not liable for the injuries resulting to plaintiff from the falling thereof, even though you may find from the evidence that said pile was higher than such piles were usually piled.''

It was upon the giving of that instruction that the court based its order sustaining the motion for a new trial.

I. Even if we should find that there was evidence sufficient to justify the submission of the case to the jury we see no error in that instruction and no ground therefore to base the order sustaining the motion for a new trial. Respondent suggests no point in the instruction as error, nor does he suggest any other ground sustaining the ruling of the court in that particular. We hold that it was error to have sustained the motion for a new trial on that ground.

II. There was no evidence of negligence on the part of the defendants to justify the submission of the case to the jury. So far as Lawler is concerned his connection with the case consists only in the fact that he was foreman of one of the departments of the American Car and Foundry Company's business. The plaintiff testified that Clark told him that Lawler told him where to pile the iron, but that was mere hearsay and both Clark and Lawler denied it. There was no evidence that the pile that fell was negligently constructed or that it contained a defect, that was known or could have been known by the exercise of ordinary care. The pile had stood in place for several months; if it had been cord wood, possibly the length of time might have suggested that some of the pieces had become rotten, but this was pig iron.

The petition charges that it "had been so piled and placed as that it was liable to fall over at any time," but it does not specify in what particular it was defective. Under that averment (assuming with-

out conceding that it was sufficient to state an act of negligence) the plaintiff could have introduced evidence to prove any defect in the construction or location of the pile that would indicate its dangerous condition, as that it was leaning to one side, or was not compact or otherwise, but the only thing he attempted to prove was that it was higher than usual. He offered no evidence to show that the height rendered it dangerous. Men of experience in that business could have been found to testify that the height of seven or eight feet rendered the pile dangerous if such was the fact, but neither the court nor the jury could take judicial cognizance that such was the fact. Yet with no evidence except that the pile was seven or eight feet high the jury was left to conjecture that from that fact alone it was dangerous. Jurors may sometimes draw on knowledge that comes from the common experience of mankind to assist them in reaching a conclusion, but that is knowledge that men in general have, not a few in particular. If it is knowledge that comes by the experience of a class in a particular business it must be proven by evidence. There was no such evidence in the case; the only evidence that could be considered as bearing on the question was that of the plaintiff himself and his companion in labor and they both testified that viewing the pile and having seen it for months they saw nothing to indicate danger —how then could the jury say that it was dangerous? The plaintiff knew more about piles of pig iron than the average juror, he had been engaged for several years in piling and seeing piles, and he saw no danger, yet he asks the jury to conjecture that there was danger.

The only evidence in the case that tends to show the cause of the falling of the pile is the evidence of the plaintiff himself who testified that in making the new pile they placed it so near the old pile that the end of a piece of iron when it happened to be a

little longer than other pieces and when it was thrown on the pile was liable to hit the pieces in the other pile and jar it. The common experience that we have above referred to might help us to see the possible consequence of the force of a jar caused by throwing against the old pile a piece of pig iron eighteen inches long and weighing fifty or sixty pounds. The record before us indicates that that is what the learned trial judge thought was most probably the cause. But it did not devolve on the defendants to point out the cause, the burden was on the plaintiff to show that the pile fell because of its own inherent defect, and that it was a defect which the defendants knew or would have known if they had exercised reasonable care. There was no witness on either side shown to be more experienced or more competent to judge of the condition of the pile than the plaintiff himself and he said he discovered no defect.

The judgment is reversed and the cause remanded to the circuit court with directions to overrule the motion for a new trial and enter judgment according to the verdict.

All concur.