## WOLLARD v. POLLOCK et al.

### No. 21936.

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1954.

E. A. Farrir, Richmond, William Aull, Jr., Lexington, for appellant. Aull & Aull, Lexington, of counsel.

Horace F. Blackwell, Lexington, Edward T. Matheny, Jr., Kansas City, for respondents. Caldwell, Downing, Garrity & Eastin, Kansas City, of counsel.

CAVE, Presiding Judge.

This is a suit to recover damages to plaintiff's truck resulting from a collision with a truck owned by defendant Pollock and driven by defendant Abbott. A jury trial resulted in a verdict and judgment for defendants on plaintiff's petition and for plaintiff on defendant Pollock's counterclaim. Plaintiff appealed.

The petition alleged certain grounds of primary negligence and the plaintiff's case was submitted on such theories. Defendant Abbott's answer admitted certain formal matters, but denied all allegations of negligence and alleged that plaintiff was guilty of contributory negligence in certain respects. Defendant Pollock's answer was to the same effect and also contained a counterclaim for damages to his truck.

The errors complained of on the appeal are directed at certain instructions given on behalf of the defendants. There is no question that the evidence was sufficient to submit negligence and contributory negligence in certain respects.

There were only three witnesses who testified concerning the issue of negligence and these were Earl Davis, the agent and driver of plaintiff's truck; Albert Bliss, who was riding in that truck; and Kenneth Abbott, the agent and driver of defendant's truck. There is very little conflict in the evidence relative to the basic facts. The collision occurred about noon on a clear day at the intersection of Lexington and College Streets in Richmond, Ray County, Missouri. Lexington Street is an east and west main trafficway and about thirty feet wide. College Street is about the same width and a north and south one-way street, for northbound traffic. Plaintiff's truck was being driven west on Lexington and on the north side of the street, and according to Davis and Bliss, at a speed of about twenty miles per hour. Defendant's truck was being driven east along Lexington and on the south side thereof. Davis estimated the speed of that truck, as it approached the intersection, at about twenty miles per hour, while Bliss estimated it was traveling twenty to thirty miles per hour. Davis and Bliss saw defendant's truck approaching when it was about one-half block from the intersection (they gave no estimate of this distance in feet). They paid no further attention to the approach of the truck until the front wheels of their truck were at the east curb line of the intersection, when they noticed Abbott starting to make a left-hand turn into College Street and in front of their truck. Davis applied the brakes and skidded his truck, but there was a collision near the center and on the north side of the intersection, damaging both trucks. Davis testified that after the collision Abbott stated to him, "Earl, I never saw you, I am sorry."

Abbott testified that he was driving defendant Pollock's truck east on Lexington Street at about fifteen miles an hour, with his left wheels near the center of that street and that as he "neared the intersection" he noticed plaintiff's truck about one-

half block away but did not look at it or observe its approach again until an instant before the collision; that as he approached the intersection he intended to turn to the left and slowed down to about ten miles an hour and started to make the turn into College Street without giving any signal of his intention so to do, and when he was on the north side of the intersection he heard screeching of brakes and saw plaintiff's truck "so close to me that it looked like you could about touch it; then I heard a crash." He later measured the skid marks of plaintiff's truck and found it had skidded thirty feet and began the skidding ten or twelve feet east of the east curb line of College Street. He stated that "just before I started to turn, * * * a matter of seconds or split seconds * * *" he saw plaintiff's truck approaching and it was then about 150 or 175 feet away; that he travelled about thirty feet at ten miles per hour while plaintiff's truck was travelling that distance to the point of collision. These distances and time were estimates.

Plaintiff (appellant) asserts the court erred in giving defendants' Instruction No. D–2, because no sufficient factual hypothesis was submitted on the issue of excessive speed. This was an instruction on contributory negligence. It first refers to the facts submitted in plaintiff's Instruction No. P–1 and then declares the law to be, that the driver of plaintiff's truck should exercise the highest degree of care in the operation thereof; defines the highest degree of care, and proceeds, "Therefore, if you find and believe from all the evidence in this case that the plaintiff's driver failed to exercise the highest degree of care while operating said truck on a public street, in that the said plaintiff's driver, as he approached the intersection of Lexington and College Streets, negligently and carelessly failed to keep a reasonably sufficient lookout for other vehicles ahead of him on Lexington Street, if so, or carelessly and negligently drove the plaintiff's truck at a high and excessive rate of speed under the circumstances, if so, and if you further find that such failure to exercise the highest degree of care contributed to cause the dam-

age to plaintiff's truck, if so, then you should find that the driver of plaintiff's truck is guilty of contributory negligence, and plaintiff cannot recover herein under the aforesaid Instruction No. P–1, even though you further find and believe from the evidence that defendant Kenneth Abbott was negligent in the operation of defendant's truck."

Plaintiff's Instruction No. P–1 required the jury to find, among other things, that plaintiff's truck was being driven westward on Lexington and approaching the intersection; that defendant's truck was being driven eastward on Lexington and approaching the intersection; that there was a collision at the intersection and that it was due to certain negligence on the part of defendant's driver; thus there was no occasion for Instruction D–2 to restate the surrounding circumstances leading up to the collision for two reasons: there was no substantial conflict in that evidence, and for the further reason that Instruction D–2 referred to the facts required to be found in plaintiff's Instruction P–1. Calhoun v. McMahan, Mo.App., 257 S.W.2d 205, and Hopper v. Conrad, Mo.Sup., 260 S.W.2d 496. Plaintiff relies on Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, and certain cases following the Yates case. However, in the very recent case of Hooper v. Conrad, supra [260 S.W.2d 500], the court en banc partly overrules the Yates case and announces the general rule applicable to a verdict directing instruction in negligence cases as follows: "Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, *either by recital or by reference to other instructions,* the facts essential in law to support the verdict. In like manner, verdict-directing instructions in behalf of the defendant should recite on their face *or by reference to other instructions* any essential fact or facts shown or not shown which will defeat plaintiff's right of recovery. Where there is no divergence

in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction." (Italics ours.)

Plaintiff seems to concede that Instruction D–2 properly submitted the issue of plaintiff's agent negligently failing to keep a lookout for approaching vehicles, but argues that that is not true relative to the issue of *excessive speed*, because there was conflicting evidence on such issue. He says, "The instruction should have set out the factual situations at and prior to the collision, the location of plaintiff's truck when the defendant's driver neared and entered into the intersection; that the plaintiff's truck was approaching and attempting to cross the intersection; that he drove into the intersection and into the truck of the defendant at a high and dangerous rate of speed, * * *."

█ There is no substantial conflict in the evidence relative to where and in what direction the trucks were being driven, or that defendant's driver turned to his left at the intersection, or where the collision occurred, or where the trucks were when the drivers first saw each other; or what their rate of speed was at that time. The only apparent conflict in the evidence is the location of plaintiff's truck when defendant's driver approached the intersection and started to turn left. At most that is only one bit of evidence tending to prove speed, and we do not believe it was necessary to recite that fact in the instruction. When Instructions P–1 and D–2 are read together, all essential facts which must be found by the jury are submitted.

█ Appellant next complains that defendants' Instruction D–3 was erroneous. This was a burden of proof instruction and reads: "The court instructs the jury that under the law of this state it is not required that defendants disprove the plaintiff's case. The law casts upon the plaintiff the burden of proving his case by preponderance of the credible evidence, that is, the greater weight of the credible evidence *to the reasonable satisfaction of the jury*. If, therefore, you find the evidence touching the charge of negligence against the defendants as submitted in these instructions does not preponderate in favor of the plaintiff, or is evenly balanced, then, in either event, plaintiff is entitled to recover against the defendants." (Italics ours.) The criticism is levelled at the phrase *to the reasonable satisfaction*. The insertion of this phrase in a burden of proof instruction continues in the face of repeated criticisms and warnings by the appellate courts. In the very recent case of Machens v. Machens, Mo. Sup., 263 S.W.2d 724, 731, the court reviews an array of Missouri decisions discussing this question and says: "During the last ten years, we have frequently and continuously condemned * * * the use of this term in burden of proof instructions. We have pointed out also that it has been condemned in other states. * * * However, we have not yet directly held that it is reversible error and reversed a judgment on that ground. * * * We certainly have sufficiently warned the bench and bar against inserting such phrases in burden of proof instructions. Nevertheless, our duty to the litigants involved requires us to determine whether or not the giving of this instruction was prejudicial error in this case." Because of the full and analytical discussion of this question in the Machens case we need not lengthen the opinion by reviewing the authorities cited in the briefs. The trial court did not find the instruction prejudicial or misleading and overruled the motion for new trial, and when the whole record is considered we are unwilling to reverse the judgment on that sole ground.

█ Plaintiff contends that the court erred in giving Instruction D–4: "The Court instructs the jury that you are the

sole judges of the facts and of the credibility of the witnesses and the weight to be accorded to their testimony. You are not required to accept as a fact that statement of any witness, if any, which you find contrary to the physical facts established by the evidence in the case and contrary to common knowledge and experience of mankind, and it is your province to give the testimony of each witness just so much credit as you believe it to be entitled to from you." This instruction was approved in Steinmetz v. Nichols, 352 Mo. 1047, 180 S.W.2d 712, 716. See also Roush v. Alkire Truck Lines, Mo.Sup., 245 S.W.2d 8, 12. Plaintiff relies on George v. Moulder, Mo. App., 257 S.W.2d 380, 384. The instruction in that case was held error because it violated the rule against singling out and commenting upon the testimony of an expert witness. That is not true of the above instruction. The giving of this cautionary instruction was largely within the discretion of the trial court. Where, as here, that court passed upon the propriety of such cautionary instruction by overruling the motion for new trial, this court will not interfere unless the trial court has clearly erred in exercising its discretion. West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, 313.

■ The last contention is that the court erred in giving Instruction D–1, which submits humanitarian negligence as a ground for recovery by defendant Pollock on his counterclaim. This question arises because of the following: Pollock's original counterclaim did not plead humanitarian negligence, but at the close of the evidence the court permitted him to amend the counterclaim and include such negligence. However, this amendment was not actually filed until after plaintiff had given notice of appeal. The verdict and judgment was for plaintiff on the counterclaim and defendant Pollock did not appeal therefrom.

Plaintiff argues that it was error to give Instruction D–1 because humanitarian negligence was not pleaded in the counterclaim at the time the instruction was given, and therefore it submitted an issue not pleaded. The court had permitted defendant to amend the counterclaim and include this ground of negligence before the instruction was given and the cause was submitted to the jury. It cannot be said that the instruction was erroneous because it was *broader* than the pleading. Plaintiff does not contend that the court erred in *permitting the amendment* or that the *contents* of the instruction are erroneous. The delay in filing the amendment is not to be commended, but we do not believe plaintiff was injured thereby since the verdict was in his favor on that issue.

Judgment affirmed.

All concur.